Nicholson, C. J.,
delivered the opinion of the Court.
This was an action of ejectment for a tract of land in "Weakly county, in which the plaintiff below obtained a verdict and judgment.
On the trial, plaintiff relied on a grant from the State of Tennessee, dated on the 1st of December, 1857, and based on an entry made on the 27th of October, 1853, as recited on the face of the grant. He also read and relied on a copy of the entry, Ho. "969, dated October 27th, 1853, and upon the plat and certificate of survey, dated March 19th, 1856.
Defendant relied on a grant from the State of Tennessee, dated November 27th, 1869, and a copy of the entry, No. 952, dated January 16th, 1855.
It was agreed that each grant covered the land in controversy. It was also agreed that plaintiff’s entry is dated October 22nd, 1853, and is numbered on the margin of the entry taker’s book, No. 969, and is recorded in said book at page 965.
It was further agreed that defendants’ entry was dated January 16th, 1855, and is numbered in the *321 margin of the entry taker’s book, No. 952, and recorded in said book at page 949.
The dates agreed on as tbe dates of the entries, are those annexed by the parties to their respective locations, and copied by the entry takers on their books.
The Circuit Judge charged the jury that “the entry of the oldest date was superior to an entry of a later date, although the entry of a later date may have been recorded and numbered in the entry taker’s book before that of an older date.”
To this ruling the defendant excepted, and brings the cause to this court by appeal in error.
It is the established doctrine in this State, that in an action of ejectment, an elder entry with a younger grant will prevail against a younger entry with an elder grant: Parish v. Cummins, 11 Hum., 297. The entry is in the nature of a contract of sale by the State to the enterer,. and when the evidence of this contract is placed upon the books of the entry taker, it operates as notice to all subsequent purchasers by entry — the entry taker’s book being regarded as a public record.
The reason of the rule, therefore, that an elder entry with a younger grant will prevail against a younger entry with an elder grant is, that the subsequent enterer being affected with notice, his younger entry is fraudulent and void, as to the older enterer. Hence the importance attached to the dates of entries in such controversies.-
Ever since the case of Reid v. Dodson, decided in *322 1809, 1 Tenn. Rep. (Cooper’s Ed.) 313, it Ras been held that “an entry taker’s Rook is a record, and that parol evidence is not admissible to show an alteration or erasure therein, or that an entry was put on the record after the date expressed in the record itself.” In the case of Goodloe v. Wilson, 2 Tenn. Rep. (Cooper’s Ed.) 460, it was held that “ the date of an entry, as it stands on the book, cannot be contradicted, altered, or explained by parol evidence, nor by any evidence of custom, nor yet by any other entry on the book itself.” It is clear, therefore, that we are bound to regard the date of the plaintiff’s entry as it appears on the record of the entry taker’s book as its true date, and we are precluded by the fact that it is part of the record, from looking to its number or its location 'in the record for the purpose of contradicting its correctness.
But it is contended for defendant that as the object of requiring the entry to be recorded is that subsequent enterers may have notice that the land has been appropriated, therefore, the number marked on the book, and the page of the book on which it is recorded, are legitimate facts from which the true date of the entry may be ascertained. In support of this reasoning we are referred to the Acts of 1177 and ' 1783, by which entry taker’s officers were first established, and by which it was provided that when a person presented to the entry taker a written claim to specific land, a copy thereof should be entered in a book, and that each *323 entry should be made in the order of time in ■which it should be received, and numbered in the margin in progressive numbers. Upon these provisions of the statute it is argued that the rights of an enterer, under these acts, should be controlled by the time when his written claim was placed on the record, and that this time would be indicated more clearly by the number and the location in the book, when compared with other entries recorded with higher numbers and on subsequent pages of the book, than by the date of the written claim, which was written and dated by the claimant himself, and copied into .the book. We can very well see how a subsequent enterer, with full knowl-. edge of a prior entry on the record, might make out a written claim for the same land, and by ante-dating it, and having it copied upon the record, defeat the claim of the prior entry, if the date annexed to the claim is made conclusive by virtue of its being part of the record.
Or without any fraud, the written claim might be made out and dated, but not presented to the entry taker for recording, for months and years, and long after other purchasers, ignorant of the claim so held up, had entered the same land. Yet, if the date of the claim, as annexed to it by the claimant was conclusive, the entry last recorded would take the land, although the last entry was made with notice, by the record, that the land was already appropriated.
Before the Act of 1777, there was no law re *324 quiring the claim, or, location as it was then called, to be recorded; and it was to avoid the confusion and fraud that necessarily arose from the want of such recording, that the Act of 1777 was passed. "We have seen, that by that act the entry, taker was required to record the claims or locations, in the order of time, in which they were presented, and to number each claim or location on the margin of his hook. This shows clearly that the claim was only to take effect from the time, it was recorded, and this was to be ascertained from the record, by the act of the entry taker in recording it according to its time of presentation, which time would be indicated by its number and by its relative position on the books. It was not intended by the act, that the date annexed to the claim by the locator was to be the date of his claim when converted into an entry by being recorded, but the date of the entry was intended to be determined by the time at which the record was made.
It is true, that by the Act of 1777, there is no direction given to the entry-taker to enter on his book the time at which a claim was presented, so as to make the date of the entry a matter of record; but the Act of 1819, c. 1, passed for the adjudication of North Carolina land claims, and for satisfying the same out of the vacant soil, south and west of the congressional reservation line, it is provided, in section 17, after the priorities of the claims were ascertained by lot, that the surveyor (who was then both surveyor and entry taker) *325 should enter the claims in a book, in progressive numbers, leaving no blank leaves or spaces between the said entries, and “ every location shall bear date the day on which it shall be made, and entered accordingly.” This Act of 1819, c. 1, was said by Judge Caruthers, in Fly v. E. Tenn. College, 2 Sneed, 695, to be the basis for the land system in "West Tennessee, and although by its terms it was confined to the satisfaction of North Carolina land claims, it may be regarded as a legislative construction of the Act of 1777. Tinder this act, no doubt could exist as to its fixing the date of the recording of the location, as the date of the entry.
It was not until the passage of the Act of 1847, c. 20, that the vacant lands south and west of the congressional reservation line were opened to location and entry, by the mere payment of the fees of entering and surveying. By the fourth section of that act it was provided, that “any of the vacant lands, not claimed by occupancy or preemption, may be entered in the same way that vacant lands are now entered, north and east of the congressional reservation line.”
By the Act of 1823, c. 49, (H. &. C., 113,) provision was made for establishing county offices for receiving entries, for vacant lands north and east of the congressional reservation line. By the seventh section, it was provided that “all persons wishing to make an entry in any of said offices, shall produce to the entry taker, at the time of making *326 the same, a location in -writing, setting forth the nearest water courses, mountains, or remarkable places; the beginning or lines of lands already surveyed, or other specialties., and shall be written on at least one-quarter of a sheet of paper; and it shall be the duty of the entry taker on receiving-such location, with the name of the enterer, to enter the same in a well-bound book, to be by him kept for that “purpose, with, the name of the en-terer and the number of acres claimed; and every entry shall be made and recorded in the order of time in which it shall he received.” By the tenth section, it is made the duty of the surveyors, “upon receiving a copy of the entry, to proceed to survey the same within ninety days after receipt of such copy of the entry, agreeably to the direction of this act;” and to “make out a fair plat thereof, on not less than half a sheet of paper, setting forth in such plat the date and number of the entry,” etc.; and at the end of every six months to transmit the plats to the Registers for grants.
It will be observed that plaintiff and defendants both entered the land in controversy, by virtue of the Act of 1847, c. 20, s. 4. And that their respective claims must he determined by the manner of entering lands prescribed by the Act of 1823, c. 49, just quoted. The manner of entering land provided for in the Act of 1823, is substantially the same as that prescribed in the Act of 1777. In both, claimants are to present written claims or locations to the entry taker — he is required to record *327 them in Ms book, in the order of time presented, and to mark them with progressive numbers. In both, it seems to be assumed, that the date of the location will correspond with tké date of the entry, and hence there is no specific provision in either, that the entry taker shall note on his record the time when he receives and enters a location, but in both, in contemplation of law, the date of the entry is the time at which the claim or location ripens into an entry, by the act of its being-recorded. Prom that time the enterer has an inchoate title to the land entered, and the record from that time becomes notice of his title to all subsequent locators and enterers. bTo other construction would effectuate the leading object of both acts, which was to protect the claim of the first enterer, and to give notice thereof to all others. It was upon such a construction of' the Act of 1777, that the court held in 1809, as already noticed, that the book of the entry taker was a record, and that the entries made in it had all the verity and sanctity of records. In these decisions we fully concur, and regard them as applicable to the Act of 1823, and as authority in the case before us, as far as the questions involved and decided are the the same with those now raised.
In those cases it was held, that the date of an entry fixed by record is conclusive, and cannot be explained or contradicted by extrinsic evidence. In this we concur, assuming that the date of an entry means the specific time at which the claim was *328 recorded, and not the time which may be indicated by the date annexed by the claimant to his written claim or location. Ve do not hold, nor do we understand the court in 1809 as holding, that if a location was written and dated prior to the time of presenting it to the entry taker, or, that if at the time of presenting it for record he should ante-date it, and the location, with such prior or ante-date should be copied and entered on his book, the false date would thereby constitute the true date of the entry, and relate back to the time indicated by the date annexed to the location. Such a construction would make the record speak falsely, and would defeat the very object of the law. The object of the law in requiring the location to be recorded, was exactly the same as that which requires deeds to be registered, to operate as notice, and to operate from the time of recording and registering, and not from the date of the location or deed.
In a contest, therefore, between two enterers, as to which has the older entry, the question is, which was first recorded, and not which of their locations has the older date. If the entry taker has noted on his book the time at which the location was recorded, that would be the date of the entry, and this being record evidence, it is conclusive. If the entry taker has failed to record the date of the entry, but has recorded the location in his book, and given to it the number required by law, then it is legitimate to look to the record, both before and after the entry in question, to ascertain the fact *329 which of the two contesting entries was first recorded; or, in other words, to ascertain which was the elder entry.
In the case before us tfie proof shows that both locations were received and recorded by the entry taker, but in neither case does the record show the time at which the location- was received and recorded. The record shows that the plaintiff’s location was dated on the 27th of October, 1853, and on the record it is numbered bio. 969. The certificate of the surveyor shows that .he surveyed the location of plaintiff on the 19th of March, 1856, but he fails to show, as the law requires, either the date or number of the entry which he surveyed. . TJpon this survey a grant issued on the 1st of December, 1857.-
The defendant adduced in evidence an entry, numbered bio. 952, and with the date of January 16th, 1855 annexed to his location as recorded. He then resorted to the entry taker’s book to show, and did show, that on his book his entry was recorded on page 949 of the book, and that plaintiff’s entry was recorded on page 965. He showed further from the book, that his entry was numbered on the book Ho. 9-52, and that the plaintiff’s was numbered Ho. 969. He showed also the several entries from his own number, 952, in progressive numbers down to plaintiff’s number, 969, from which it may be inferred that all of those intermediate entries bore date simultaneous with the dates of the locations, except that of plaintiff and one other.
Prom this proof it is manifest that defendant’s *330 entry Rad an earlier number on the record than that of plaintiff’s — and that defendant’s entry is recorded on tRe entry taker’s book twenty pages before that of plaintiff is recorded.
TRe Circuit Judge Reid, and so cRarged tRe jury, that tRe entry of tRe oldest date was superior to an entry of a later date, altRougR the entry of a later date may Rave been recorded and numbered in tRe entry taker’s book before the entry of an older date. In this charge the general principles of law, that an elder entry will prevail over a later one, was correctly stated; but the proposition that the elder entry will prevail over the later, involves the assumption that the date of the location as copied on the record, was the date of the entry, and that this date could not be controverted by the' facts stated. In this proposition we cannot concur. After a laborious examination of our confused and complicated system of land laws, (if system it can be called,) and after carefully studying the early cases decided, we are constrained to bold that the true .date of an entry is the time at which it was recorded on Ris book by the entry taker, and that this is a question of fact, in the determination of which it is legitimate • to look to the entry taker’s book to see Row the entries stand recorded, and what are their numbers, for the purpose of determining which entry has the older date, and is hence the better title.
TRe judgment below will be reversed, and the cause be remanded for a new trial.